UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:05-CV-238-H

TAMI BLACKBURN                                                      PLAINTIFF

V.

HQM OF RIVERVIEW HEALTH
CARE CENTER, et al.                                                  DEFENDANTS

**MEMORANDUM OPINION**

Defendants, HQM of Riverview Health Care Center, HQM of Floyd County, Inc. and Home Quality Management, Inc. (collectively "HQM"), have moved to dismiss Plaintiff's sole remaining claim of retaliation under 31 U.S.C. §§ 3729-3732, the False Claim Act ("FCA") on the grounds that the allegations do not meet the elements of such a claim. After reviewing the pleadings, the Court concludes that Plaintiff cannot make such a cause of action in these circumstances.

I.

This case has a long history which the Court will summarize.

Home Quality Management, Inc., is a Florida corporation which operates or manages numerous skilled nursing facilities around the country, including the Riverside Healthcare Center in Prestonsburg, Kentucky. Plaintiff, Tami Blackburn, is a licensed practical nurse who worked at Riverview on three separate occasions, the most recent being from February, 2001, through January 10, 2003.

Plaintiff initiated this case back in April, 2005, under the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.* The United States was advised of the allegations and began its own

investigation to determine whether it would join the case. After over four years of investigation, the United States filed a notice of its election not to intervene as a party plaintiff. At about the same time, Blackburn's original attorney withdrew from the case.

Consequently, on June 18, 2009, this Court entered an order requiring Plaintiff to show her intention to proceed by either (1) stating her acquisition of new counsel, or (2) stating her intention to proceed *pro se*. Over the next six months, Plaintiff stated her intention to obtain counsel and proceed, but never did so. On January 28, 2010, after the Court entered another deadline order, current counsel entered an appearance. Thereafter, the Court required Plaintiff to restate and clarify her claims. On March 18, 2010, Plaintiff filed her Second Amended Complaint.

In the Second Amended Complaint, Blackburn says that during her 2003 employment with HQM, she witnessed many fraudulent billing practices and much inadequate care of patients. Her original complaint and her more recent Second Amended Complaint made allegations of false and fraudulent claims. But she has now conceded that these claims cannot go forward. In Count II of the complaint, Blackburn alleges that HQM fired her "in response to her investigation and initiation of this claim." Later in this Memorandum, the Court will discuss the all-important specifics of this allegation. HQM says that it fired Blackburn due to inadequate job performance, specifically improper wound care of a patient.

On July 2, 2010, HQM moved to dismiss. Plaintiff's response spanned only two pages and conceded that she had no claim for a direct violation of the Federal False Claims Act. Consequently, the only remaining claim is that in Count II for retaliatory discharge under 31 U.S.C. § 3730(h). Her defense of this claim was limited.

2

II.

To survive a motion to dismiss, a complaint must present enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Any claim under 31 U.S.C. §§ 3729-3732 constitutes a claim of fraud and must satisfy the heightened pleading requirements. Fed. R. Civ. P. 9(b). *United States ex rel. Snapp, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008). The Sixth Circuit recently emphasized that "particularized allegations of an *actual* false claim is an indispensable element of a FCA violation," and must be specifically pled if a complaint is to survive Rule 9(b). *United States ex. rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 505 (6th Circ. 2007) ("Bledsoe II") (citing *United States ex rel. Bledsoe v. Community Health Systems*, 342 F.3d 634, 643 (6th Cir. 2003) ("Bledsoe I").

III.

To establish a claim for retaliatory discharge requires Plaintiff to show: "(1) she engaged in a protected activity; (2) her employer knew that she engaged in a protected activity; and (3) her employer discharged or otherwise discriminated against her as a result of the protected activity." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003)(internal citations omitted). "Protected activity" means "lawful acts done by the employee on behalf of the employee or others in *furtherance of an action under the False Claims Act*. 31 U.S.C. § 3730(h) (emphasis added); *United States, ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 448 (6th Cir. 2008). The Sixth Circuit says that a plaintiff's allegations of protected activity must "be reasonably connected to the FCA" and entitlement to protection under FCA requires at the time she confronted her superiors she "sufficiently allege[d] activity with *a nexus to a qui tam action*,

3

or fraud against the United States government." *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000). The Court concludes that Blackburn has failed to plead the first two elements with the necessary particularity.

A.

Plaintiff 's specific allegations of retaliation begin in paragraph 87 of the Second Amended Complaint. She alleges the following actions during the January 2003, state survey.

> Plaintiff "challenged her superiors regarding residents' substandard care" and was "terminated" for this challenge. DN 67 at ¶ 87.
>
> Preceding a state inspection she was summoned to the DON's office and warned that, if questioned, she should report to surveyors that Riverview's staffing was adequate. Blackburn objected that the facility was actually short-staffed, and Sparkman again warned her to do as she was told. *Id.* at ¶ 88.
>
> When Blackburn questioned HQM policy, Sparkman and Stanley responded angrily, caller her names and tried to intimidate and humiliate her. *Id.* at ¶ 89.
>
> Her termination was in fact the direct result of her challenges to HQM's illegal practices and her refusal to lie to state surveyors during their January 2003 inspection. *Id.* at ¶ 90.
>
> Blackburn discussed patient care, would care, staff shortages and falsified records with the state surveyors. *Id.* at ¶ 92.

Thus, the factual allegations underlying her retaliatory termination claim arise entirely from a January 2003 state survey inspection. A careful reading of the complaint reveals that Plaintiff does not allege that she put HQM "on notice" of any supposed federal billing fraud during this time. As the complaint states, Plaintiff's "issue" with HQM of Riverview pertained entirely to a January 2003 state survey, which concerned patient care and staffing. The question presented is whether the state survey had **any** nexus to the subsequent federal *qui tam action*.

4

First, Plaintiff's direct allegation that she was wrongfully terminated as a "direct result of her challenges to HQM's illegal practices and her refusal to lie to state surveyors," *Id.* at ¶ 90, falls short of the standard for a protected activity. Generally, an "employee's investigation of his employer's non-compliance with federal or state regulations" is insufficient to support a whistleblower claim. *See e.g., United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998). Her alleged refusal to lie to a state survey inspector does not constitute "protected activity" under FCA. *Id.*[1]

Here, Plaintiff's "challenges to HQM's illegal policies" appear to consist entirely of her statements to Ms. Sparkman and Ms. Stanley in connection with the impending January 2003 survey inspection. [*Id.* at ¶ 89]. Whether these verbal challenges contain a factual basis for demonstrating that legal action under the FCA a "reasonable or distinct possibility" is doubtful. The Sixth Circuit has considered this subject at length. *See McKenzie*, 219 F.3d at 515-16 (collecting cases for proposition that "in furtherance of language" requires the "plaintiff to be investigation matters that reasonably could lead to a viable False Claim Act case"). The Court's reading of this discussion leads it to conclude that Blackburn's activity in 2003 could not be deemed an "investigation" that would lead to false claim charges.

In her response, Plaintiff focuses on the allegations in paragraphs 25-28 of her Second Amended Complaint. However, those paragraphs relate solely to describing the nursing home regulatory survey process. Thus, her response only serves to emphasize that disagreement with the January 2003 survey at HQM of Riverview does not reasonably translate into a connection to

---

[1] In *Yesudian*, the D.C. Circuit did reserve the district court's dismissal of a retaliation claim. The Circuit said that the district court was wrong to have required evidence that the plaintiff had already begun an investigation of false claims at the time of his termination. But he had written a letter to his employer detailing his complaints about falsified claims. So, Blackburn's conduct is much different than that found in *Yesudian*.

an FCA. *See e.g., Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (noting that the FCA "does not create liability merely for a health care provider's disregard of Government regulations" unless the disregard results in the knowing request for payment from the government). Blackburn's complaints or comments to state officials in 2003 made no reference whatsoever to billings, fraudulent or otherwise.

For all these reasons, Plaintiff has failed to satisfy the first prong of the retaliatory discharge element.

B.

The Sixth Circuit has previously stated that "legal redress for retaliatory discharge" under FCA requires plaintiff to plead "facts which would demonstrate that [HQM] had been put on notice that plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government." *Yuhasz*, 341 F.3d at 567 (internal citation omitted) (emphasis in original). Plaintiff's failure to plead the second element seems pretty clear.

Assuming that Plaintiff's conduct did constitute protected activity, it involved "challeng[ing] her superiors regarding residents' substandard care," "object[ing] [to Ms. Sparkman] that the facility was short-staffed" and she informing "Ms. Sparkman and Ms. Stanley of her refusal to lie to the state surveyor." [DN 67 at ¶¶ 87-90]. These actions are insufficient to put HQM on notice that she was considering a private *qui tam* action or assisting the government in bringing one.

No one can doubt that several years after her termination, Plaintiff charged HQM with having made false claims for payment from the United States and creating false records to

6

support such claims. *Id.* at § 106. Indeed, the first thirty-seven (37) pages of the Second Amended Complaint details those false claims and the fraudulent activity that supported it. However, Plaintiff has conceded to dismiss that claim. Even if Plaintiff had information which ultimately led to her FCA claim, that is not enough. Plaintiff must have made HQM aware that she was intending to bring an FCA action. *Yuhasz*, 341 F.3d at 568. The Court concludes that Plaintiff has not and cannot satisfy the second prong of a retaliation claim under the FCA.

Plaintiff has worked with the government for many years attempting to develop a False Claim Act case against HQM. Apparently, those efforts were completely unsuccessful, as she conceded the claim during briefing. Now, she has failed to allege at least two of the basic requirements for a retaliation claim under 31 U.S.C. § 3730(h) and as described in Sixth Circuit precedent. This case deserves dismissal.

The Court will enter an order consistent with this Memorandum Opinion.

cc: Counsel of Record